UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
SHLOMO KISH and ZISSY KISH,

                     Petitioners,           **MEMORANDUM & ORDER**
                                                 23-MC-2035 (MKB)
        v.

UNITED STATES OF AMERICA and
DEPARTMENT OF THE TREASURY, INTERNAL
REVENUE SERVICE,

                     Respondents.
---------------------------------------------------------------
MARGO K. BRODIE, United States District Judge:

Petitioners Shlomo and Zissy Kish commenced this action on August 1, 2023, against

Respondents the United States of America and the Department of the Treasury, Internal Revenue

Service ("IRS"), seeking to quash two summonses the IRS issued to them in connection with an

IRS examination of their federal income tax returns and reporting obligations (the

"Summonses").  (Pet. to Quash IRS Summons ("Pet."), Docket Entry No. 1.)  Petitioners contend

that the Summonses are invalid and unenforceable because they do not meet the requirements for

IRS summonses set forth in *United States v. Powell*, 379 U.S. 48 (1964).  (Pet. ¶¶ 10, 28.)  The

IRS opposes the motion and cross-moves to enforce the Summonses.[1]  (Resp'ts' Mem. in Opp'n

to Pet. & in Supp. of Cross-Mot. to Enforce Summonses ("IRS Mem."), Docket Entry No. 18.)

---

[1] Both parties filed reply papers in support of their respective motions.  (*See* Pet'rs'
Reply in Supp. of Mot. to Quash & in Supp. of Opp'n to Cross-Mot. to Enforce ("Pet'rs'
Reply"), Docket Entry No. 19; Resp'ts' Reply in Supp. of Cross-Mot. to Enforce ("IRS Reply"),
Docket Entry No. 20.)

For the reasons set forth below, the Court denies Petitioners' motion to quash the Summonses and grants the IRS' cross-motion to enforce the Summonses.

## I.   Background

Shlomo Kish and Zissy Kish are United States persons who are subject to income tax on their income under the Internal Revenue Code ("IRC"). [2]  (Decl. of Sang Yoon Kim in Supp. of Resp'ts' Opp'n to Mot. to Quash & in Supp. of Resp'ts' Cross-Mot. to Enforce ("Kim Decl.") ¶ 5, Docket Entry No. 17).  As part of their income tax obligations, Petitioners are required to report all taxable income and pay taxes according to the provisions of the IRC.  (*Id.* ¶ 5.)  The IRC imposes additional filing obligations on taxpayers who have an interest in or authority over foreign financial accounts or other specified financial assets.  (*Id.* ¶ 6); *see also* 26 U.S.C. §§ 6038, 6038b, 6038d, 6046, 6046a, 6048 (setting forth additional filing requirements for taxpayers with specified foreign assets or income).

### i.   The IRS investigation of Petitioners' income and asset reporting

In connection with an ongoing investigation of Petitioners' federal income tax liabilities, the IRS has three open examinations: an examination of the income tax liability of Petitioners for each taxable year ending December 31, 2011 through December 31, 2021, for which they filed a Form 1040 income tax return with joint filing status, (Kim Decl. ¶ 8); an examination of Shlomo Kish's potential liability for penalties based on its belief that he did not file IRS Form 5471[3] for

---

[2]  Unless otherwise noted, the Court relies on the Petition and the parties' submissions for the relevant undisputed facts.

[3]  IRS Form 5471 is a form that "[c]ertain U.S. citizens and residents who are officers, directors, or shareholders in certain foreign corporations file . . . to satisfy the reporting requirements of sections 6038 and 6046 [of the IRC], and the related regulations."  *About Form 5471, Information Return of U.S. Persons With Respect to Certain Foreign Corporations*, IRS, https://www.irs.gov/forms-pubs/about-form-5471 (last updated July 17, 2023).

each taxable year from 2011 through 2021, despite allegedly having legal ownership of foreign bank accounts and foreign real estate located in the United Kingdom,[4] (*id.* ¶¶ 9–11); and an examination of Shlomo Kish's potential liability under 31 U.S.C. § 5231(a)(5) based on its belief that he did not file a Report of Foreign Bank and Financial Accounts ("FBAR") from 2018 through 2021, despite allegedly having ownership of foreign bank accounts located in the United Kingdom, (*id.* ¶¶ 12–13).

On February 8, 2023, Revenue Agent Sang Yoon Kim issued the first of five information document requests ("IDRs") to Petitioners (the "February 2023 IDR"). (*Id.* ¶ 22.) The February 2023 IDR requested banking, financial, tax, and business records for the 2020 tax year only. (*Id.*) Petitioners produced some responsive documents. (*Id.*) On March 17, 2023, Agent Kim issued a second IDR (the "March 2023 IDR"), which requested an interview with Petitioners. (*Id.* ¶ 23.) The March 2023 IDR requested that Petitioners confirm by March 27, 2023, whether they would comply with the request for an interview. (*Id.*) On March 27, 2023, Petitioners' counsel informed Agent Kim that he would not produce Petitioners for an interview.[5] (*Id.*) The following day, on March 28, 2023, Petitioners produced additional documents in response to the

---

[4] The IRS contends that Shlomo Kish provided documents showing that he held legal ownership of bank accounts and real estate located in the United Kingdom, and legal ownership of companies incorporated in the United Kingdom. (Kim Decl. ¶ 11.) Petitioners dispute that Shlomo has legal ownership of the foreign entities and assert that he is a victim of identity theft perpetrated by his family members and their representatives, who created the entities in his name without his knowledge. (Pet. ¶¶ 16(b)–(d).)

[5] Petitioners dispute that they refused to provide testimony and instead contend that they "simply indicated that this is not an appropriate time" for an interview because United Kingdom authorities have not completed their investigation into the foreign entities. (Pet'rs' Reply ¶¶ 26–27.) Petitioners also contend that an interview would be "unfair" because they do not have access to foreign documents relevant to the IRS's examination, lack understanding of "complex questions of international tax law," and are non-native English speakers who have a "poor understanding of English legal and financial phrases." (*Id.* ¶¶ 28–32.)

February 2023 IDR.  (*Id.* ¶ 25.)

On May 26, 2023, Agent Kim issued a third IDR (the "May 26, 2023 IDR") to Petitioners.  (*Id.* ¶ 26.)  The May 26, 2023 IDR explained that the IRS' examination had expanded from the initial tax year, 2020, to the period beginning with tax year 2011 and requested books and records for the expanded time period.  (*Id.*)  On May 31, 2023, Agent Kim issued a fourth IDR (the "May 31, 2023 IDR"), which explained to Petitioners that examination had been expanded to address Shlomo's FBAR reporting obligations in relation to ownership of foreign bank accounts.  (*Id.* ¶ 27.)

On June 5, 2023, Agent Kim issued a fifth and final IDR (the "June 2023 IDR") to Petitioners.  (*Id.* ¶ 28.)  The June 2023 IDR requested documents still outstanding from the February 2023 IDR.  (*Id.*)  Petitioners produced additional documents in response to the June 2023 IDR.  (*Id.* ¶ 30.)  On June 30, 2023, Agent Kim attempted through Petitioners' counsel to schedule an interview with Petitioners.  (*Id.* ¶ 31.)  Counsel declined to make Petitioners available for an interview.  (*Id.* ¶ 32.)

### ii.   Summonses issued to Petitioners

On July 6, 2023, Agent Kim issued the Summonses.[6]  (Kim Decl. ¶ 33; Summons to Shlomo Kish, annexed to Kim Decl. as Ex. 1 ("Kim Decl. Ex. 1"), Docket Entry No. 17-1; Summons to Zissy Kish, annexed to Kim Decl. as Ex. 2 ("Kim Decl. Ex. 2"), Docket Entry No. 17-2; *see also* Pet. ¶ 19.)  The IRS served the Summonses on Petitioners on July 13, 2023 by

---

[6] Agent Kim did not send a delinquency notice or a pre-summons letter to Petitioners before issuing the summonses.  (Pet. ¶ 19.)  Section 4.46.4.7.3 of the Internal Revenue Manual ("IRM") establishes a three-step process for enforcing delinquent IDRs.  IRM § 4.46.4.7.3(1).  Under the "mandatory" process, agents must send a delinquency notice and a pre-summons letter before issuing a summons to a taxpayer.  However, if "a taxpayer indicates that the requested information will not be provided without a summons," then "the IDR enforcement procedures do not apply and the IRS should move directly to issue a summons."  *Id.*

affixing them to a door near Petitioners' residence.  (Pet. ¶ 22; *see also* Service of Summons on Shlomo Kish, annexed to Kim Decl. as Ex. 3 ("Kim Decl. Ex. 3"), Docket Entry No. 17-3; Service of Summons on Zissy Kish, annexed to Kim Decl. as Ex. 4 ("Kim Decl. Ex. 4"), Docket Entry No. 17-4.)

The Summonses directed Petitioners to appear on August 8, 2023, at an IRS office in New York City "for an interview regarding tax years ending in December 31, 2011 through December 31, 2021" and to bring with them or produce prior to the interview certain documents identified in the attachment to the Summonses.  (Kim Decl. Ex. 1; Kim Decl. Ex. 2.)  In relevant part, the Summonses requested the following documents for each year 2011 through 2021: (1) Petitioners' bank records; (2) documents relating to Petitioners' brokerage accounts, mutual funds, and security accounts; (3) documents relating to Petitioners' credit, debit, and charge cards; (4) documents pertaining to Petitioners' ownership of domestic and foreign entities; (5) documents relating to Petitioners' non-taxable sources of income; (6) Petitioners' tax information, including copies of prior tax returns; (7) documents used to prepare schedules in Petitioners' tax returns, including documents related to Petitioners' expenses and rental income; (8) documents showing income and expenses pertaining to Petitioners' rental properties; and (9) records of Petitioners' foreign travel, including all original copies of their U.S. and foreign passports.  (Kim Decl. Ex. 1; Kim Decl. Ex. 2; *see also* Pet. ¶ 24.)

On or about July 26, 2023, Petitioners submitted an Identity Theft Affidavit (IRS Form 14039) to the IRS.[7]  In an attachment to the affidavit, Petitioners claimed that Shlomo's identity had "been fraudulently used by [his] family members who reside in the UK, leading to tax-

---

[7]  (Decl. of Shlomo Kish in Supp. of Mot. to Quash ("Kish Decl.") ¶ 5, Docket Entry No. 1-1; Identity Theft Affidavit, annexed to Kish Decl. as Ex. 1 ("Kish Decl. Ex. 1"), Docket Entry No. 1-1.)

related issues and investigations initiated by both the UK HM Revenue & Customs and the IRS."
(Kish Decl. Ex. 1.)  Petitioners also explained that they "conduct [their] business solely within
the United States, . . . have never engaged in any business activities in the UK," and discovered
the identity theft when they received notice of the investigations.  (*Id.*)  Petitioners also contend
that Shlomo has "no ownership or association with" certain specified businesses based in the
U.K. and only learned of their existence through the investigations.  (*Id.*)

Petitioners did not appear for the August 8, 2023 interview and have not agreed to a date
or time for a future interview with the IRS.  (Kim Decl. ¶¶ 36, 38.)  On or about July 17, 2023,
Petitioners requested an extension to submit the requested documents, and produced some
additional documents to the IRS on or about August 28, 2023.  (*Id.* ¶¶ 34–36, 39.)  Petitioners
have produced approximately one thousand pages of documents that they collected in response
to the IDRs and the Summonses.  (Pet. ¶ 15; *see also* Description of Documents Received from
Taxpayers, annexed to Kim Decl. as Ex. 8 ("Kim Decl. Ex. 8"), Docket Entry No. 17-8.)  The
documents include bank statements for U.S.- and U.K.-based banks, tax returns filed in the U.K.,
real estate records for U.S. properties, corporate documents for U.K.-based companies, and other
books and records.  (Kim Decl. Ex. 8.)

### iii.  Motion to quash the Summonses

On August 1, 2023, Petitioners commenced this action by filing a motion to quash the
Summonses.  (*See* Pet.)  Petitioners contend that the Summonses are invalid and unenforceable
because they fail to meet the requirements for IRS summonses set forth in *United States v.
Powell*, 379 U.S. 48 (1964).  (Pet. ¶¶ 10, 28.)  On November 15, 2023, Petitioners submitted
papers in further in support of their motion to quash and also opposed the IRS' cross-motion to
enforce the Summonses.  (*See* Pet'rs' Reply.)  In their reply papers, Petitioners request an

evidentiary hearing to address two of their affirmative defenses: (1) whether the Summonses violate the Fourth Amendment; and (2) Petitioners' ability to comply with the Summonses regarding documents that are not in their possession.  (*Id.*)

On October 13, 2023, the IRS filed an opposition to Petitioners' motion to quash the summonses and cross-moved to enforce the Summonses.  (*See* IRS Mem.)  On December 14, 2023, the IRS submitted a reply in further support of its cross-motion to enforce the Summonses. (*See* IRS Reply.)

## II.  Discussion

### a.  The Summonses are enforceable

Petitioners argue that the IRS issued the Summonses in bad faith and that the Summonses are unenforceable because they fail to meet the four *Powell* requirements.  (Pet. ¶¶ 28, 29–67.)

The IRS argues that the Summonses should be enforced because "each of the four *Powell* factors are amply satisfied, and Petitioners are unable to muster any evidence that the [S]ummonses were issued for an improper purpose."  (IRS Mem. 9.)

"Because our system of federal taxation relies on self-reporting, it is essential that the IRS have the power to issue administrative summonses in order to have effective oversight." *Upton v. IRS*, 104 F.3d 543, 544 (2d Cir. 1997) (citing *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984)).  "In 26 U.S.C. § 7601, Congress gave the IRS a 'broad mandate to investigate and audit persons' to [e]nsure compliance with federal tax laws."  *Id.* (quoting *United States v. Bisceglia*, 420 U.S. 141, 145–46 (1975)); *see also Mollison v. United States*, 481 F.3d 119, 124 (2d Cir. 2007) ("The broad language of the statutes evinces 'a congressional policy choice in favor of disclosure of all information relevant to a legitimate IRS inquiry, which is 'essential' to the IRS's ability to ferret out potential Code violations in our system of self-

reporting." (emphasis and citations omitted)).  "As a necessary incident to the investigatory

power, Congress gave the IRS expansive authority to[] . . . summon the person liable for tax

. . . to appear before the Secretary at a time and place named in the summons and to produce

such books, papers, records, or other data, and to give such testimony, under oath, as may be

relevant or material to such inquiry."  *Upton*, 104 F.3d at 545–46 (quoting 26 U.S.C.

§ 7602(a)(2)); *see also United States v. Navarro*, 304 F. App'x 908, 910 (2d Cir. 2008) ("The

IRS has authority to issue summonses to ascertain the liability 'of any person for any internal

revenue tax' and to 'examine any books, papers, records, or other data which may be relevant or

material to such inquiry.'" (quoting 26 U.S.C. § 7602)).  "This wholesale grant of summons

authority is based upon the traditional duty persons have to appear, give testimony, and provide

evidence, and is only 'subject to the traditional privileges and limitations.'"  *Upton*, 104 F.3d at

546 (quoting *United States v. Euge*, 444 U.S. 707, 711, 714 (1980)); *see also PAA Mgmt., Ltd. v.

United States*, 962 F.2d 212, 216 (2d Cir. 1992) ("[T]he summons power of the IRS under the

[Internal Revenue] Code is quite broad, and courts are constrained to exercise caution before

circumscribing the summons authority.").

     "An individual must comply with an IRS summons as 'long as the summons meets

statutory requirements and is issued in good faith.'"  *United States v. Mellon*, 719 F. App'x 74,

77–78 (2d Cir. 2018) (quoting *United States v. Stuart*, 489 U.S. 353, 356 (1989)).  In

determining whether an IRS summons should be enforced, "courts may ask only whether the IRS

issued a summons in good faith, and must eschew any broader role of overseeing the IRS's

determinations to investigate."  *Mellon*, 719 F. App'x at 78 (internal quotation marks omitted)

(quoting *United States v. Clarke*, 573 U.S. 248, 254 (2014)).  To establish good faith, "the

government must make a prima facie showing as to the four factors listed in [*Powell*, 379 U.S.

48]." *Id.* "The four *Powell* factors are: (1) the IRS' investigation is conducted pursuant to a legitimate purpose; (2) the summons is relevant to that purpose; (3) the information sought is not already within the Commissioner's possession; and (4) the administrative steps required by the Code have been followed." *Id.*; *see also Highland Cap. Mgmt., L.P. v. United States*, 626 F. App'x 324, 326 (2d Cir. 2015) (same); *Navarro*, 304 F. App'x at 910 (same); *Adamowicz v. United States*, 531 F.3d 151, 156 (2d Cir. 2008) (same).

"[A]bsent contrary evidence," the IRS can satisfy the *Powell* standard "by submitting a simple affidavit from the investigating agent." *Clarke*, 573 U.S. at 254; *see also Mellon*, 719 F. App'x at 78 ("[T]he IRS usually files an affidavit from the responsible investigating agent." (alteration in original) (quoting *Clarke*, 573 U.S. at 250)). "The taxpayer, however, has an opportunity to challenge that affidavit, and to urge the court to quash the summons 'on any appropriate ground.'" *Clarke*, 573 U.S. at 250 (quoting *Reisman v. Caplin*, 375 U.S. 440, 449 (1964)). If the "government sustains its 'minimal' burden of compliance with the *Powell* factors, 'the burden shifts to the taxpayer to disprove one of the four *Powell* criteria, or to demonstrate that judicial enforcement would be an abuse of the court's process.'" *Mellon*, 719 F. App'x at 78 (quoting *Adamowicz*, 531 F.3d at 156). "The taxpayer bears a heavy burden in this regard, because he or she must disprove the actual existence of a valid civil tax determination or collection purpose by the IRS." *Id.* (quoting *Adamowicz*, 531 F.3d at 156).

### i. The IRS' investigation is being conducted pursuant to a legitimate purpose

Petitioners argue that the IRS cannot establish the first factor of *Powell* — that the investigation is being conducted pursuant to a legitimate purpose — because there is no legitimate purpose to investigate Petitioners. (Pet. ¶¶ 13, 31–32.) In support, Petitioners contend that the bulk of the IRS' examination "may be time barred" by provisions in the IRC limiting

IRS' ability to make tax assessments for a given tax year to three years from the date the return for that year was filed or the date the return was due, whichever is later.  (*Id.* ¶¶ 13, 68–72.) Petitioners assert that "the IRS has no legal authority to demand to conduct examinations of the Petitioners['] tax records" for tax years" 2011 through 2016.  (*Id.* ¶ 72.)  Petitioners also argue that the IRS acted in bad faith by issuing broad and burdensome document requests with unrealistic deadlines, despite the fact that Petitioners are not native English speakers and have a limited understanding of tax and accounting matters.  (*Id.* ¶¶ 54–65.)

The IRS argues that its three open examinations into Petitioners are legitimate because section 7602 authorizes the IRS to issue summons "for the purpose of ascertaining the correctness of any return" or "determining the liability of any person for any internal revenue tax."  (IRS Mem. 10 (quoting 26 U.S.C. § 7602(a).)  The IRS contends that "the mere fact that a summons seeks information beyond the statute of limitations does not mean that it lacks a legitimate purpose" and, in any event, "Petitioners' potential violations are likely not time barred under the [IRC]" because certain exceptions apply to "extend the statutory period of enforcement."  (*Id.* at 11.)

The first prong of *Powell* "is known as the 'legitimate purpose test,' and it turns on whether the IRS is pursuing its investigation in good faith."  *Palmer v. United States*, No. 21-CV-3497, 2022 WL 1537189, at *2 (E.D.N.Y. May 12, 2022) (citing *Mollison v. United States*, 481 F.3d 119, 124 (2d Cir. 2007)).  In applying the legitimate purpose test, courts "are not concerned with whether any subsequent enforcement action is likely to be meritorious" because summonses are part of "the preliminary information-gathering process designed to determine whether a violation exists, not to actually prosecute a violation."  *Mollison*, 481 F.3d at 123 (emphasis omitted); *see also Powell*, 379 U.S. at 57 (administrative summonses are "analogous

to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not").  "In view of the [IRC]'s broad delegation of summons authority to the IRS, the requirements that a summons have a legitimate purpose and relevance have been interpreted liberally in favor of the IRS."  *PAA Mgmt.*, 962 F.2d at 216; *Palmer*, 2022 WL 1537189, at *2 (same).  "The Supreme Court accordingly has given somewhat extreme examples of purposes that would be improper in connection with a summons: harassing the taxpayer, putting pressure on the taxpayer to settle a collateral dispute, and similar kinds of bad faith abuse."  *PAA Mgmt.*, 962 F.2d at 216; *Mollison*, 481 F.3d at 124 (same).

The IRS has shown that its agents are investigating Petitioners' potential liabilities arising out of their reporting or lack of reporting of foreign assets or income to the IRS in reporting years 2011 through 2021.  (*See* Kim Decl. ¶¶ 9–14.)  Petitioners have not proffered any evidence that the IRS is pursuing some purpose outside of these potential liabilities or is otherwise pursuing its investigation in bad faith.

Petitioners' argument that the IRS lacks a legitimate purpose because it seeks some documents relating to matters that are potentially barred by the IRC statutes of limitations is without merit.  (Pet. ¶¶ 68–72, Pet'rs' Reply ¶ 3.)  While section 6501(a) of the IRC provides that "any tax imposed by [the IRC] shall be assessed within [three] years after the return was filed," 26 U.S.C. § 6501(a), the question of whether the IRS can prosecute a violation is distinct from the question of whether the IRS can investigate a potential violation, *see Mollison*, 481 F.3d at 123 (noting that summonses are part of "the preliminary information-gathering process designed to determine whether a violation exists, not to actually prosecute a violation" (emphasis omitted)).  In *Powell*, the Supreme Court rejected a similar argument and found that the IRS is

not required to show "probable cause to obtain enforcement of [a] summons, either before or

after the three-year statute of limitations on ordinary tax liabilities has expired."  379 U.S. at 57.

Since *Powell*, courts have uniformly held that the IRC's three-year limitation period on

assessments does not limit the IRS' power to investigate.  *See, e.g.*, *Gangi v. United States*, 453

F. App'x 255, 257 (3d Cir. 2011) ("*Powell* . . . makes it clear that the statute of limitations

applies only to assessments of taxes, not to summonses or other investigative procedures."

(citing *Powell*, 379 U.S. at 57)); *United States v. Lask*, 703 F.2d 293, 300 (8th Cir. 1983)

(concluding that the "three-year statute of limitations d[id] not bar enforcement of . . .

summonses" in part because "discovery of a false or fraudulent return would completely remove

any limitation on assessment under 26 U.S.C. § 6501(c)(1)"); *Ho-Yuan Chen v. United States*,

No. 14-MC-23, 2015 WL 4545407, at *2 (C.D. Cal. Apr. 20, 2015) ("[T]he mere fact that the

statute of limitations on assessments of ordinary deficiencies may have run on some of the tax

years at issue does not bar enforcement of the summons."), *report and recommendation adopted*,

2015 WL 3766764 (C.D. Cal. June 16, 2015); *Twin Palm Resort, LLC ex rel Harbour v. United

States*, 676 F. Supp. 2d 1350, 1356 (S.D. Fla. 2009) (rejecting argument that statute of

limitations barred enforcement of summons and explaining that "[t]he purpose of the summons is

to allow the IRS to determine whether . . . liability exists, and *Powell* clearly recognizes that such

investigations are a legitimate purpose underlying enforcement of a summons"); *United States v.

McHenry*, 552 F. Supp. 2d 571, 575 (E.D. Va. 2008) ("For the reasons stated in *Powell* and *Lask*,

[petitioner's] argument that the running of the three year statute of limitations on assessments

bars enforcement of a summons must likewise fail.").

      Moreover, it is unclear whether there are exceptions to the three-year statute of

limitations.  The IRS argues that exceptions to the three-year limitation on assessments may

apply to Petitioners' tax filings in each year from 2011 to 2021.  (IRS Mem. at 11.)  In relevant part, the IRS contends that when "a taxpayer fails to file one or more required foreign returns with the IRS, the assessment limitations period for that tax year remains open until three years *after* the date on which the IRS receives the missing forms."  (*Id.* (citing 26 U.S.C. § 6501(c)(8)).)  The IRS also contends that it "has reason to believe that" Shlomo "held legal ownership of foreign bank accounts and foreign real estate in the United Kingdom but has failed to file the necessary foreign returns with the IRS since at least 2011."  (*Id.* at 12.)  At a minimum, the IRC authorizes the IRS to investigate whether either exception applies or to determine the Petitioners' potential liability for tax and penalties.  *See* 26 U.S.C. § 7602(a) (authorizing the IRS to issue summonses "[f]or the purpose of ascertaining the correctness of any return" or "determining the liability of any person for any internal revenue tax or the liability . . . of any person in respect of any internal revenue tax"); *see also Powell*, 379 U.S. at 53 (noting that "[i]f a taxpayer has filed fraudulent returns, a tax liability exists without regard to any period of limitations" and that "[s]ection 7602 authorizes the Commissioner to investigate any such liability").  Accordingly, the three-year statute of limitations does not prevent the enforcement of the Summonses.[8]  *See Powell*, 379 U.S. at 58 ("The burden of showing an abuse of the court's process is on the taxpayer, and it is not met by a mere showing . . . that the statute of limitations for ordinary deficiencies has run.").

The IRS has satisfied the first *Powell* factor.

---

[8]  Petitioners also fail to provide any support for their argument that the IRS acted in bad faith by giving them short deadlines or somehow acted in bad faith because Petitioners are non-native English speakers and because of their lack of formal training in tax or accounting matters. The Court is unaware of any authority permitting courts to draw an inference of bad faith under similar circumstances.

####    ii.    The Summonses are relevant to the IRS' investigation

Petitioners argue that the Summonses fail the second *Powell* factor — relevance to the
IRS' investigation — because they: (1) are overbroad and unduly burdensome since they seek
information dating back to 2011, (Pet. ¶¶ 32, 68–72); (2) seek information that is not within
Petitioners' possession or control and cannot realistically be obtained within the time frame
given because Shlomo is a victim of identity theft and has little, if any, knowledge of the foreign
entities (*id.* ¶¶ 33, 39); and (3) are overbroad because they seek documents relating to
Petitioners' travel, and all books and records relating to "every single entity [Petitioners] have an
ownership interest or even beneficial interest" in, (*id.* ¶ 38).

The IRS argues that the information sought is relevant to its investigation into "numerous
tax-related discrepancies, including [Petitioners'] alleged failure to file forms pertaining to their
ownership of and income from foreign companies between 2011 and 2021."  (IRS Mem. 13.)
The IRS argues that Petitioners' alleged identity theft has no bearing on whether the information
it seeks is relevant to its examination, and Petitioners "cannot unilaterally refuse to participate in
that examination merely because they allege a possible future defense."  (*Id.* at 15 (citing
*Mollison*, 481 F.3d at 123–24).)  In addition, the IRS contends that the fact that Petitioners
requested only a three-week extension to comply with the Summonses, suggests that "Petitioners
themselves believed they could comply with the Summonses with only a minor extension."  (*Id.*
at 16.)  Further, the IRS argues that objections "premised on overbreadth or relevance 'do not
avail' except in 'extreme circumstances.'"  (*Id.* at 14 (citing *Adamowicz*, 531 F.3d at 157).)

The second *Powell* factor requires the government to show that "the summons is relevant
to [the IRS' legitimate investigative] purpose."  *Mellon*, 719 F. App'x 74, 78 (2d Cir. 2018)
(citing *Powell*, 379 U.S. at 57–58).  Congress intended "to allow the IRS to obtain items of even
*potential* relevance to an ongoing investigation, . . . [and] the [IRS] therefore should not be

required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense." *PAA Mgmt.*, 962 F.2d at 216 (quoting *Arthur Young*, 465 U.S. at 814). Courts "defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." *Mollison*, 481 F.3d at 124 (quoting *In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995)); *see also United States v. Fridman*, 665 F. App'x 94, 96 (2d Cir. 2016) ("Under [*Powell*], the standard for showing relevance is 'very low.'" (quoting *Adamowicz*, 531 F.3d at 158–59)).

The IRS is investigating possible discrepancies arising out of Petitioners' reporting or lack of reporting of foreign assets and income on tax forms between 2011 and 2021, and asserts that the information the Summonses seek is relevant to that investigation.  (IRS Mem. 13–15; *see also* Kim Decl. ¶ 44 ("The testimony and documents . . . sought by the [S]ummonses are necessary to properly examine Petitioners' federal income tax liabilities, as well as Shlomo Kish's liability for the failure to file IRS Forms 5471 . . . for each of the taxable years ending December 31, 2011 through December 31, 2021 . . . [and] Shlomo Kish's liability . . . for the failure to file an FBAR for each of the years ending December 31, 2018 through December 31, 2021.").)  The Court cannot conclude that the IRS' determination of relevancy is "obviously wrong." *Mollison*, 481 F.3d at 124 (citation omitted).

While the Summonses seek documents covering a lengthy time period (2011 to 2021), the IRS is examining Petitioners' reporting and potential liability for each year during that ten-year span.  The Summonses seek testimony and documents that are relevant to determining whether any violations occurred throughout the relevant time period.[9]  (*See* Kim Decl. ¶¶ 8–14);

---

[9]  As discussed above, the statute of limitations period on assessments does not prevent the IRS from investigating discrepancies in Petitioners' tax filings during this ten-year period,

*see Gilmartin v. U.S. IRS*, 174 F. Supp. 2d 117, 120 (S.D.N.Y. 2001) (enforcing summons where IRS agent stated they were "seeking to gather information relating to [the petitioner's] income, expenditures, assets and liabilities for the relevant years as well as his outstanding liabilities"); *see also Lizalek v. United States*, No. 23-CV-30, 2023 WL 8113240, at *4 (E.D. Wis. Nov. 22, 2023) (enforcing summons where information sought was relevant to IRS investigation because it "relate[d] directly to [taxpayer's] financial activities during the 2017 through 2020 tax years and may shed light on the correctness of his returns"); *United States v. Gendreau*, No. 12-MC-303, 2014 WL 464754, at *1 (S.D.N.Y. Jan. 22, 2014) (enforcing summons issued in investigation covering twelve-year period); *United States v. Asero*, 07-MC-334, 2009 WL 580428, at *1 (E.D.N.Y. Mar. 5, 2009) (enforcing summons directing taxpayer to testify and produce documents "concerning the tax years at issue" in investigation spanning eight tax years); *Villella v. United States*, No. 99-CV-3975, 2000 WL 968773, at *4 (S.D.N.Y. July 12, 2000) ("[P]etitioners failed to file income tax returns for the tax years ended December 31, 1991 through December 31, 1998.  While the IRS may conclude that the petitioners do not owe taxes for the years under investigation, this determination can only be made after reviewing the information summoned.").

In addition, although the Summonses also seek broad categories of documents pertaining to Petitioners' foreign and domestic income, accounts, and assets, tax returns, and travel records, these documents have at least "potential relevance" to the IRS' investigation into the accuracy of Petitioners' reporting during the relevant time period.  *PAA Mgmt.*, 962 F.2d at 216 (emphasis and citation omitted); *see also United States v. Beverly*, No. 19-CV-10068, 2020 WL 2542872, at

---

particularly where the IRS argues there are circumstances that could expand the limitations period for each year under investigation.  *See supra* section II.a.i.

*4 (C.D. Cal. Jan. 28, 2020) (finding that summons with "83 requests" seeking documents relating to, among other things, petitioners' "bank accounts, brokerage accounts, mutual funds, and security accounts," "credit, debit, and charge cards," "ownership of entities and structures," "travel[,] and tax information," sought "material that might throw light upon the correctness of a taxpayer's returns" (internal quotation marks omitted)); *United States v. Santoso*, No. 17-3030, 2018 WL 3862263, at *3 (D. Md. Aug. 14, 2018) (finding that summons was "relevant to the inquiry into the correctness of [petitioner's] 2005–2012 tax returns" where summons sought "documents relating to domestic and foreign bank accounts," "ownership interests in any 'entities and structures,'" "travel records," and "domestic and foreign tax returns for the years 2005–2012").

The IRS has satisfied the second *Powell* factor.

### iii.   The information sought by the Summonses was not already within the IRS' possession

Petitioners contend that the Summonses fail on the third prong — that the IRS does not already possess the requested information — because the IRS seeks information that is either already in the IRS' possession or has already been provided by Petitioners.  (Pet. ¶¶ 40–43.)  In support, Petitioners note that the Summonses request "complete copies of [their] previously filed original" tax returns for years 2011 through 2021, which are already in the IRS' possession because Petitioners "timely filed their federal tax returns with the IRS" for each year.  (*Id.* ¶¶ 41–42.)  Petitioners also argue that they have already produced thousands of pages' worth of documents responsive to the Summonses.  (Pet'rs' Reply ¶¶ 12–15.)

The IRS argues that Agent Kim's declaration satisfies the IRS' burden under the third *Powell* factor because Agent Kim's declaration "expressly states that the IRS is not in possession of the testimony sought by the [S]ummonses or — with the exception of the documents listed in

Exhibit 8 — the documents and records sought by the [S]ummonses."  (IRS Mem. 16 (citing Kim Decl. ¶¶ 40–42).)  The IRS also contends that, to the extent Petitioners have produced responsive documents, the Summonses, "by their own terms . . . are only seeking documents that have not already been provided by Petitioners to the IRS."  (IRS Reply 5.)  The IRS argues that "even if there is 'some redundancy between the documents sought and those already produced, that in itself does not require a finding that the summonses should be quashed.'"  (*Id.* at 6 (quoting *Adamowicz*, 531 F.3d at 159); *see also* IRS Mem. 17 (same).)

To prevail on the third *Powell* factor, the government must show that "the information sought is not already within the Commissioner's possession."  *Mellon*, 719 F. App'x at 78 (citing *Powell*, 379 U.S. at 57–58).  The "already possessed" factor is "'narrowly construed,' such that even where some information may be technically in the IRS's possession, if the bulk of the materials summoned is not demonstrably in the possession of the IRS, the summons may be properly enforced."  *Adamowicz*, 531 F.3d at 159 (citing *United States v. Linsteadt*, 724 F.2d 480, 483–84 (5th Cir. 1984)).  Thus, "[a]lthough there may be some redundancy between the documents sought and those already produced, that in itself does not require a finding that the summonses should be quashed."  *Id.*

While as Petitioners argue certain documents are already in the IRS' possession, including Petitioners' previously-filed tax returns and the documents Petitioners have already produced, these documents do not constitute "the bulk of the materials summoned."  *Adamowicz*, 531 F.3d at 159.  The IRS has established that the bulk of the information sought by the Summonses are not within their possession.  Agent Kim's declaration states that none of the testimony sought by the Summonses is within the possession of the IRS.  (Kim Decl. ¶ 41.)  In addition, the IRS provides a list of documents that Petitioners have produced to the IRS, and

according to Agent Kim, Petitioners have not provided all the documents sought by the
Summonses.  (*Id.* ¶ 42; Kim Decl. Ex. 8 (list of documents received from Petitioners).)  For
example, Agent Kim states that the IRS has not received "documents regarding Petitioners' real
estate transactions . . . to show the acquisition or transfer of certain United Kingdom properties
reportedly held by [Shlomo] and reported on his U.K. tax returns."  (Kim Decl. ¶ 42.)

  This evidence sufficiently establishes the third *Powell* factor.  *See, e.g.*, *United States v.
Delaware Dep't of Ins.*, No. 20-CV-829, 2021 WL 3012728, at *6 (D. Del. July 16, 2021)
(finding statement from IRS agent that "other than . . . already-produced documents, the sought-
after documents described in Request 1 of the Summons are not already in the possession of the
IRS" sufficient to satisfy the third *Powell* factor (alterations and internal quotation marks
omitted)), *report and recommendation adopted*, 2021 WL 4453606 (D. Del. Sept. 29, 2021),
*aff'd sub nom. United States v. Dep't of Ins.*, 66 F.4th 114 (3d Cir. 2023); *United States v.
Raniere*, 895 F. Supp. 699, 703 (D.N.J. 1995) ("The third prong of the *Powell* requirement is . . .
satisfied by the Bassinder Declaration, which lists the documents already in the possession of the
Government, and states that those documents do not satisfy the scope of the IRS Summons.");
*see also Standing Akimbo, LLC v. United States*, 955 F.3d 1146, 1160 (10th Cir. 2020)
(concluding the argument that taxpayers "have already produced 'voluminous records'" to the
IRS "does not rebut the IRS's showing that it does not possess the information summoned");
*Gangi v. United States*, 2 F. Supp. 3d 12, 21 (D. Mass. 2014) ("The petitioners make only a
limited challenge based upon the third *Powell* factor, arguing that the request in the . . . summons
for tax returns seeks information that the IRS already possesses.  The IRS summons, however,
seeks not only the returns, but related workpapers, drafts, and similar documents, which are not
within the IRS's possession."), *aff'd*, 638 F. App'x 16 (1st Cir. 2016).

Moreover, the Summonses explicitly state that Petitioners need not produce documents that were "previously produced . . . to the requesting Revenue Agent" and may instead "reference the date of production of the document" in their response to the Summonses.  (Kim Decl. Ex. 1 at 6; Kim Decl. Ex. 2 at 6.)  Based on the evidence, the Court cannot conclude that "the bulk of the materials summoned is . . . demonstrably in the possession of the IRS." *Adamowicz*, 531 F.3d at 159.

The IRS has satisfied the third *Powell* factor.

### iv.   The IRS followed the required administrative steps

Petitioners argue that the IRS cannot establish the fourth *Powell* factor — that it followed required administrative steps — because the IRS issued the Summonses without complying with the proper procedures.  (Pet. ¶¶ 44–53.)  In support, Petitioners argue that the IRS failed to follow administrative steps set forth in the Internal Revenue Manual ("IRM"), which requires the IRS to send a delinquency notice and a pre-summons letter before it issues a summons to a taxpayer.  (*Id.* ¶ 46 (citing IRM § 1.11.6.1.6).)

The IRS acknowledges that the IRM generally requires agents to mail a delinquency notice and pre-summons letter before issuing a summons, and concedes that it did not do so in this case, but argues that these procedures are "not necessary where 'a tax payer indicates that any requested information will not be provided without a summons,'" and Petitioners "repeatedly indicated" that they would not participate in an interview.  (IRS Mem. 18 (quoting IRM § 4.46.4.7.1(3)).)  In addition, the IRS contends that any violation of the IRM did not cause Petitioners any harm or prejudice and therefore does not require that the Court quash the Summons.  (*Id.* at 18–19.)

The fourth *Powell* factor requires the IRS to show that "the administrative steps required

by the [IRC] have been followed." *Clarke*, 573 U.S. at 250 (quoting *Powell*, 573 U.S. at 57–58); *see also Highland Cap.*, 626 F. App'x at 326 (same).  Where the IRS has violated the IRC or an IRS regulation, the Second Circuit has "adopt[ed] the rule that whether the government's violation of the IRC or an IRS regulation in connection with the issuance of a summons affects the enforceability of that summons depends on the totality of the circumstances, including the seriousness of the infringement, the harm or prejudice, if any, caused thereby, and the government's good faith." *Adamowicz*, 531 F.3d at 161.

Petitioners have not shown that the IRS failed to follow any required administrative steps. Although the IRM requires that agents send taxpayers a delinquency notice and pre-summons letter before issuing a summons, IRM § 4.46.4.7.3(1), the IRM also allows agents to skip those steps and instead issue a summons if "a taxpayer indicates that any requested information will not be provided without a summons," *id.* § 4.46.4.7.1(1); *see also id.* § 4.46.4.7.3(1) (same).  The IRS' decision to directly issue the Summonses "was based on Petitioners' failure to comply with the IRS's previous request for an interview as well as statements from Petitioners' counsel indicating that Petitioners would continue to refuse to comply with requests for interview[s] going forward."  (Kim Decl. ¶ 33.)  While Petitioners assert that they "have never refused to provide testimony," (Pet'rs' Reply ¶¶ 18, 25), they do not dispute that their counsel informed the IRS that they would not appear for interviews on the requested dates, (*see, e.g.*, *id.* ¶ 26 (stating that "Petitioners have . . . indicated that this is not an appropriate time" to provide testimony)). Based on the evidence submitted by the parties, the Court cannot conclude that the IRS violated the IRM when it issued the Summonses and decided not to first send a delinquency notice and

pre-summons letter.[10]  Petitioners do not allege that the IRS failed to follow any other

administrative steps, nor is there any other evidence before the Court to suggest that it failed to

do so.

The IRS has satisfied the fourth *Powell* factor.

**b.   The Court denies Petitioners' request for an evidentiary hearing**

In addition to their argument that the Summonses fail under *Powell*, Petitioners request

an evidentiary hearing to determine whether the Summonses should be quashed on two

additional grounds: (1) their Fourth Amendment right to be free from unreasonable searches and

seizures, (Pet'rs' Reply ¶¶ 38–41); and (2) lack of possession or control over the documents, (*id.*

¶¶ 42–51)

The IRS argues that a hearing would be unnecessary and inappropriate.  (IRS Reply 9–

10.)  In support, the IRS argues that (1) summonses that satisfy the *Powell* requirements do not

violate the Fourth Amendment, and (2) Petitioners' claims that they lack access to responsive

documents due to Shlomo's alleged identity theft do not justify a hearing because Petitioners

have not made the "substantial preliminary showing of an alleged abuse" necessary to warrant an

---

[10]  Because the Court finds that the IRS did not violate the IRM, the Court declines to
address whether a violation of the IRM's procedures could constitute a failure to follow a
required administrative step within the meaning of *Powell*.  *See, e.g.*, *Groder v. United States*,
816 F.2d 139, 142 (4th Cir. 1987) ("The violation of a guideline" set forth in the IRM is, "by
itself, without legal effect to quash a summons or to suppress evidence at a criminal trial.  In
order to prevail, a taxpayer must show more than a mere violation of the Internal Revenue
Manual."); *United States v. Captive Alternatives, LLC*, No. 22-CV-406, 2023 WL 2885932, at
*13 (M.D. Fla. Feb. 13, 2023) ("[T]here is ample case law . . . that the IRC, not the IRM, is
controlling for purposes of the fourth *Powell* factor."), *report and recommendation adopted as
modified*, 2023 WL 2885660 (M.D. Fla. Mar. 8, 2023); *but see Conner v. United States*, 434 F.3d
676, 683 (4th Cir. 2006) ("While violations of the Internal Revenue Manual are relevant to the
bad faith inquiry . . . they do not constitute proof by themselves of the IRS's bad faith in issuing
the challenged summonses.").

evidentiary hearing.  (*Id.* at 9–10.)

### i.    The Fourth Amendment

Petitioners argue that an "evidentiary hearing is necessary to explore the scope and purpose of the [Summonses] to determine" whether they are reasonable under the Fourth Amendment.  (Pet'rs' Reply ¶ 41.)  Petitioners contend that the Summonses are "an unreasonable search and seizure" in violation of the Fourth Amendment because they seek "every single detail for ten (10) years of the businesses' records without a legitimate purpose."  (*Id.* ¶ 40.)

The IRS responds that an evidentiary hearing is not necessary because a summons that satisfies *Powell* does not violate the Fourth Amendment.  (IRS Reply 9.)

"A summons that is 'reasonable in scope and issued for a proper purpose . . . d[oes] not constitute an unlawful search and seizure in violation of the Fourth Amendment.'"  *United States v. Ackerman*, 112 F.3d 505, 1996 WL 601414, at *1 (2d Cir. 1996) (unpublished table decision) (quoting *United States v. Schlom*, 420 F.2d 263, 266 (1969)).  Other courts have uniformly held that enforcement of an IRS summons does not violate the Fourth Amendment if the *Powell* requirements are met.  *See, e.g.*, *Standing Akimbo*, 955 F.3d at 1166 ("The enforcement of an IRS summons does not violate the [F]ourth [A]mendment as long as the IRS has complied with the *Powell* requirements." (quoting *United States v. Reis*, 765 F.2d 1094, 1096 (11th Cir. 1985))); *Cypress Funds, Inc. v. United States*, 234 F.3d 1267, 2000 WL 1597833, at *4 (6th Cir. 2000) (unpublished table decision) (same); *see also Presley v. United States*, 895 F.3d 1284, 1293 (11th Cir. 2018) ("[W]hen it comes to the IRS's issuance of a summons, compliance with the *Powell* factors satisfies the Fourth Amendment's reasonableness requirement."); *United States v. Hopper*, No. 05-MC-172, 2005 WL 3277778, at *2 (E.D.N.Y. Oct. 29, 2005) ("Enforcement of an IRS summons does not violate the Fourth Amendment if the requirements

of [*Powell*] have been met.").

Because the Court finds that the Summonses comply with the *Powell* factors, the Court also finds that a hearing is not necessary based on Petitioners' Fourth Amendment arguments.

### ii.   Petitioners' non-possession argument

Petitioners contend that they lack possession or control of the documents requested because the foreign entities or accounts in question were created by unidentified persons who stole Shlomo's identity. (Pet'rs' Reply ¶¶ 42–51.) In support of their claim of identity theft, Petitioners provide a sworn statement from Shlomo stating that he is "the victim of identity theft" based on "various business and financial transactions conducted by one or more family members in the United Kingdom," who used his identity "to purchase properties and secure loans and conduct business." (Kish Decl. ¶ 4.) They contend that Shlomo has "conducted [his] own investigation trying to figure out who stole[ his] identity in [the] UK and found the accountant who did the UK[] tax returns." (*Id.* ¶ 9.) Shlomo also contends that he made demands on an accountant based in the United Kingdom, has produced responsive documents, and therefore has "provided all documents in [his] possession or obtainable with reasonable demands from various third parties." (*Id.* ¶¶ 2–3.)

The IRS argues that an evidentiary hearing is unnecessary because Petitioners have not made a "'substantial preliminary showing' of an alleged abuse" of the court's process. (IRS Reply 9 (quoting *United States v. Tiffany Fine Arts, Inc.*, 718 F.2d 7, 14 (2d Cir. 1983)).) The IRS contends that Petitioners' claim of identity theft and lack of possession is too vague and unsubstantiated to warrant further consideration. (*Id.* at 9–10.) In addition, the IRS argues that Petitioners' claim of identity theft is only related to their ability to produce documents and does not impact their ability to provide testimony. (*Id.* at 10 n.6.)

A taxpayer may be entitled to an evidentiary hearing "where the taxpayer's affidavits present a 'disputed factual issue, or . . . proper affirmative defenses.'" *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1183 (10th Cir. 2019) (quoting *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1445 (10th Cir. 1985)); *see also Standing Akimbo*, 955 F.3d at 1163 ("[I]f at this stage the taxpayer cannot . . . factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." (alterations in original) (quoting *Balanced Fin. Mgmt.*, 769 F.2d at 1444)); *United States v. Gippetti*, 248 F. App'x 382, 386 (3d Cir. 2007) ("[I]f 'material Government allegations are factually refuted by the taxpayer, thus presenting a disputed factual issue, or where proper affirmative defenses . . . are factually supported by the taxpayer's affidavits, the taxpayer is entitled to an evidentiary hearing.'" (quoting *United States v. Garden State Nat'l Bank*, 607 F.2d 61, 71 (3d Cir. 1979))); *United States v. Tuuri*, 26 F.3d 135, 1994 WL 242125, at *1 (9th Cir. 1994) (unpublished table decision) (noting that an "evidentiary hearing is held if taxpayer's allegations are sufficient to state a defense against summons (citing *United States v. Stuckey*, 646 F.2d 1369, 1374 (9th Cir. 1981))).

"[L]ack of possession or control of records is surely" a ground to contest a summons, *United States v. Rylander*, 460 U.S. 752, 757 (1983), but it is the taxpayer's burden to produce evidence in support of such a defense, *see United States v. Huckaby*, 776 F.2d 564, 568 (5th Cir. 1985) (petitioner "had a burden of producing relevant and reliable evidence that he was not in possession or control of the summoned documents in order to sustain his affirmative defense to enforcement of the summons").

While Petitioners may be entitled to an evidentiary hearing regarding their claim that they are not in possession of certain documents, this defense does not apply to their testimony or any

documents that are within their possession or control.  Therefore, the Court denies without prejudice to renewal Petitioners' request for an evidentiary hearing as to their claim that they are not in possession of some of the documents.  The Court grants the IRS' motion to enforce the Summonses requiring Petitioners' testimony and all responsive documents that are within Petitioners' possession or control that have not already been produced to the IRS.  After complying with the Summonses by providing testimony and the documents in their possession, Petitioners may renew their motion for a hearing as to documents they assert are not in their possession or control.

### III. Conclusion

For the foregoing reasons, the Court denies Petitioners' motion to quash the Summonses and grants the IRS' motion to enforce the Summonses.  After complying with the Summonses, Petitioners may renew their request that the Court hold an evidentiary hearing regarding Petitioners' argument that certain documents are not in their possession or control.

Dated: February 13, 2024
       Brooklyn, New York

                              SO ORDERED:


                              _____S/MKB_____
                              MARGO K. BRODIE
                              United States District Judge